**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TONDA LOWERY** **CIVIL ACTION**

**VERSUS**

**LOUISIANA DEPARTMENT OF HEALTH** **NO. 25-00927-BAJ-RLB**

**RULING AND ORDER**

Before the Court is Defendant Louisiana Department of Health's ("LDH") **Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 21)**. Plaintiff opposes the Motion. (Doc. 25). Defendant filed a Reply Brief. (Doc. 27). The Parties filed supplemental briefing. (Doc. 31; Doc. 33).

For the reasons stated herein, Defendant's Motion (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART.**

## I. BACKGROUND

This is an employment discrimination case. Plaintiff alleges the following facts, which the Court accepts as true for purposes of the instant Motion to Dismiss.

Plaintiff worked as an LDH employee from April 1, 2007, until her wrongful termination on October 30, 2024. (Doc. 1 ¶¶ 7–8). Plaintiff alleges that she is an individual with a disability as defined by the Rehabilitation Act (the "RA"), suffering from the following conditions:

(1) Meniere's Disease, which substantially limits one or more major life activities, including standing for extended periods, visual processing, comprehension, cognitive clarity, and balance;

(2) Cervical Stenosis;

(3) Lumbar Spinal Stenosis;

(4) Degenerative Disc Disease;

(5) Three herniated discs, which cause severe pain and impact mobility; and

(6) An inflamed left shoulder, which causes functional limitations and required medical documentation regarding needed accommodations.

(*Id.* ¶ 9 (citing 29 U.S.C. § 705(20)(B)). Plaintiff alleges that she had a record of such disability and was regarded as disabled. (Doc. 1 ¶ 9).

Plaintiff alleges that LDH failed to accommodate her on the following occasions:

> (1) On September 18, 2023, Dr. Elliot T. Hardy issued a letter requesting that Plaintiff be allowed to work from home while she underwent further evaluation for dizziness. LDH allegedly ignored this request.
>
> (2) On July 10, 2024, Dr. Kevin B. Riche issued a work excuse stating that Plaintiff should receive extended deadlines due to shoulder pain for the next two weeks. LDH allegedly did not comply with this request.
>
> (3) On August 9, 2024, Dr. Larry S. Bankston issued a note restricting Plaintiff to desk duty with extra time for completing assignments. LDH allegedly ignored this restriction and continued assigning Plaintiff excessive work duties.
>
> (4) Plaintiff requested flexible work hours and additional time to meet deadlines due to health-related difficulties. LDH refused to accommodate her.

(*Id.* ¶ 11).

On July 18, 2023, Plaintiff participated in a team meeting led by Supervisor Octavius Youngblood where she was publicly questioned about her

availability and workload despite her known medical issues. (*Id.* ¶ 21). During the meeting, Youngblood noted that assignments like Medicaid renewals were not "evenly distributed" but declined to reassign any duties, stating she was "not interested in taking work away from anyone." (*Id.*). She later documented that Plaintiff required "constant follow-up," and was "delaying progress." (*Id.*). Plaintiff alleges that Youngblood's remarks demonstrated retaliatory animus in response to her protected activity and set the tone for future discriminatory treatment. (*Id.*).

In early January 2024, following internal feedback and purported complaints regarding Plaintiff's job performance directly related to her documented medical limitations, Deputy Medicaid Director Charlene Julien began directing key decisions that negatively impacted Plaintiff. (*Id.* ¶ 20). Julien instructed Summer Gauthier, Medicaid Program Manager 1-B, and Dean Andrus, Medicaid Program Manager 2, to implement changes that included workload adjustments, intensified monitoring, and reassignment, without ever consulting Plaintiff or considering her medical limitations. (*Id.*). Plaintiff alleges that these actions, taken after LDH had knowledge of Plaintiff's disabilities and accommodation requests, contributed to a hostile work environment and supported a broader pattern of retaliation by LDH management. (*Id.*).

Plaintiff filed a grievance naming both Julien and Youngblood; however, LDH allegedly failed to conduct any meaningful investigation of the grievance. (*Id.*). Instead, executive management ignored Plaintiff's escalation attempts, responding only with a dismissive email in February 2024. (*Id.*).

On May 22, 2024, Plaintiff met with Gauthier and Andrus and reiterated her need for flexibility due to ongoing health issues. (*Id.* ¶ 12). Plaintiff raised alleged prior mistreatment, including being told to "get out of bed and enter leave in LEO" despite being physically incapacitated. (*Id.*). During the May 22 meeting, Plaintiff requested telework and schedule adjustments—both permitted under LDH's Telework Policy—as reasonable accommodations. (*Id.*). Although both Gauthier and Andrus acknowledged her concerns, LDH later denied those accommodations. (*Id.*).

LDH maintains a written Telework Policy, Policy No. 82.3, which allows for situational telework as a form of reasonable accommodation for employees with documented medical limitations. (*Id.* ¶ 13). Despite the Telework Policy and Plaintiff's formal written and verbal requests for situational telework supported by medical documentation, LDH refused to initiate or explore such arrangements, in violation of internal policy and federal accommodation requirements. (*Id.*).

From May through August 2024, Plaintiff reminded LDH management of her medical limitations. (*Id.* ¶ 19). On June 4, 12, and 18, 2024, Plaintiff participated in documented team meetings in which she reiterated her medical limitations and sought "schedule flexibility and workload understanding" due to her documented cervical spine, shoulder, and neurological impairments. (*Id.* ¶ 18). At each meeting, her disclosures were acknowledged, yet LDH did not provide a single accommodation. (*Id.*). Instead, LDH subjected Plaintiff to increased scrutiny and expectations that disregarded her health needs. (*Id.*).

During a June 4, 2024 team meeting, Plaintiff reminded Gauthier and Andrus

that she suffered from two disabilities that impacted the pace of her work. (*Id.* ¶ 14). She requested to be "treated with dignity, not micromanaged or treated unprofessionally," and reiterated that she would communicate in good faith. (*Id.*). Gauthier acknowledged her request and confirmed that Plaintiff had not created any problems in her role. (*Id.*). Plaintiff alleges that these discussions demonstrate LDH's actual knowledge of her disability-related limitations and her good-faith efforts to work within her capabilities. (*Id.*).

On June 18, 2024, Plaintiff participated in another meeting with Gauthier and Andrus. (*Id.* ¶ 15). During this meeting, Plaintiff acknowledged forgetting to log specific telework codes amidst ongoing health and workload challenges and committed to correcting the oversight. (*Id.*). Rather than offering support, Gauthier emphasized possible audit flags and directed Plaintiff to retroactively complete leave slips, stating, "You have not been granted any additional time . . . All deadlines set in the planner are firm deadlines," and further, ". . .you have to work with a sense of urgency." (*Id.*). This interaction followed an alleged pattern of heightened scrutiny and punitive oversight over Plaintiff's work. (*Id.*).

On June 20, 2024, Plaintiff formally requested additional time to complete a particular task, explaining that she had limitations due to her medical conditions and needed an extension of time to avoid incomplete or insufficient work product. (*Id.* ¶ 16). Defendant denied this request the same day, with Andrus stating, "[Y]our request for extensions for items listed in your planner is hereby denied" and that the decision was "FINAL." (*Id.*). Plaintiff had explained that the delays were not due to

time management issues but rather directly tied to the impairments caused by her disabilities. (*Id.*).

On July 10, 2024, Dr. Kevin Riche issued a written accommodation request to LDH asking that Plaintiff "be given extended time to finish specific deadlines due to shoulder pain for the next 2 weeks." (*Id.* ¶ 17). LDH allegedly ignored and disregarded this request. (*Id.*).

On August 9, 2024, Dr. Larry Bankston issued a follow-up note explicitly stating that Plaintiff "is limited in desk ability," and must be allowed "extra time to complete any and all assignments." (*Id.* ¶ 22). Despite having these clear directives from treating orthopedic specialists, LDH neither adjusted Plaintiff's workload nor engaged in any further discussion of accommodations. (*Id.*). Plaintiff alleges that these denials reflect a clear violation of the RA's interactive process requirement and underscore Defendant's bad faith. (*Id.*). Plaintiff also alleges that LDH subjected her to excessive and unnecessary monitoring shortly after she disclosed her disabilities. (*Id.* ¶ 29).

Plaintiff was ultimately terminated on October 30, 2024, despite allegedly being a qualified individual with a disability who could perform the essential functions of her job effectively with reasonable accommodations. (*Id.* ¶ 32).

## II. PROCEDURAL HISTORY

On October 15, 2025, Plaintiff filed this lawsuit. (Doc. 1). Plaintiff alleges that Defendant violated the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, in the following ways:

(1) Discriminating against her on the basis of her disabilities;

(2) Failing to accommodate her, including by refusing to engage in an interactive process to determine reasonable accommodations;

(3) Retaliating against her for seeking accommodations and taking medical leave, including:

a. Issuing an unjustifiably low performance review in August 2023;

b. Falsely alleging unprofessional behavior during hiring interviews in October 2023;

c. Issuing a baseless "Letter of Improvement" in October 2023;

d. Reassigning Plaintiff to an unrelated special project in January 2024, effectively isolating her from her team;

e. Increasing her workload, imposing unreasonable deadlines, and subjecting her to heightened scrutiny;

f. Removing Plaintiff from key decision-making roles without justification; and

(4) Terminating Plaintiff on the basis of her disability instead of accommodating her.

(Doc. 1).

Based on Defendant's alleged violations of the RA, Plaintiff seeks the following relief:

(1) Declaratory judgment that Defendant violated the RA;

(2) Reinstatement to her previous position or, alternatively, front pay;

(3) Back pay including lost wages, benefits, and interest;

(4) Compensatory damages for emotional distress, mental anguish, and loss of enjoyment of life.

(5) Pre- and post-judgment interest;

(6) Reasonable attorney's fees and litigation costs;

(7) All other legal and equitable relief to which Plaintiff may be entitled.

(*Id.* ¶ 45).

Now, Defendant moves to dismiss each of Plaintiff's claims against it. (Doc. 21). For the following reasons, Defendant's Motion will be **GRANTED IN PART** and **DENIED IN PART.**

## III. LEGAL STANDARD

Defendant moves to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A. Rule 12(b)(1).

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig*, 668 F.3d 281, 286 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Id*. (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) attack before addressing any challenge on the merits of the claims. *Id*.

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint . . . contain[s]

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (holding that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

**B. Rule 12(b)(6).**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## IV. DISCUSSION

Defendant moves to dismiss each of Plaintiff's claims. (Doc. 21). First, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's claims arising out of alleged "disciplinary actions" because she was a classified civil service employee with permanent status, such that the Louisiana Civil Service Commission (the "Commission") has exclusive jurisdiction over these claims. (*Id.* at 1).

Next, Defendant urges that Plaintiff fails to state a claim on which relief may be granted for three reasons:

(1) Plaintiff's request for emotional distress damages under the RA is precluded by the U.S. Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022);

(2) The majority of Plaintiff's claims are time-barred under Louisiana's one-year statute of limitations which applies to all claims arising before July 1, 2024; and

(3) Plaintiff failed to allege actionable, "materially adverse" employment actions sufficient to state a retaliation claim under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

(Doc. 21 at 1–2). The Court will address each argument in turn, beginning with whether the Court has subject matter jurisdiction to consider Plaintiff's claims.

### A. Whether the Court Has Subject Matter Jurisdiction.

First, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's claims arising out of "disciplinary actions," including her alleged

reassignment and termination and her requests for back pay, front pay, and reinstatement, because she was a classified civil service employee with permanent status. (Doc. 21 at 1). Defendant argues that the Commission has exclusive jurisdiction over these claims under the Louisiana Constitution. (*Id.*).

Plaintiff responds that this Court has repeatedly held that claims based on federal law do not fall within the Commission's exclusive jurisdiction. (Doc. 25 at 5 (citing *Butler v. La. Dep't of Health & Hosps.*, No. CV 07-723-SCR, 2008 WL 11351445, at *5 (M.D. La. Mar. 18, 2008) ("Plaintiff's claims based on federal law do not fall within the Civil Service Commission's original jurisdiction. Thus, this court has jurisdiction over the plaintiff's federal law claims irrespective of the Civil Service Commission's jurisdiction."); *Owens v. La. State Dep't of Health & Hosps.*, No. CIV.A07-743JJB-DLD, 2007 WL 4442269, at *2 (M.D. La. Dec. 14, 2007))). Plaintiff urges that Defendant cannot use Plaintiff's civil service status to strip this Court of jurisdiction over congressionally created federal rights. (Doc. 25 at 6).

Article X § 12(A) of the Louisiana Constitution provides that "[t]he State Civil Service Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, with subpoena power and power to administer oaths." Courts interpret Article X of the Louisiana Constitution "to grant exclusive jurisdiction to the Civil Service Commission in those areas where the Commission has exercised its broad and general rule-making power." *Merida v. Bd. Of Commissioners of Se. Louisiana Flood Prot. Auth.-E.*, No. CV 23-1992,

2024 WL 4252748, at *7 (E.D. La. Sept. 20, 2024), *aff'd sub nom. Merida v. Bd. Of Comm'rs of the Se. La. Flood Prot. Auth. - E.*, No. 25-30434, 2026 WL 822018 (5th Cir. Mar. 25, 2026) (citing *Akins v. Hous. Auth. of New Orleans*, 2003-1086, p. 3 (La. App. 4 Cir. 9/10/03), 856 So. 2d 1220, 1221 (internal quotation marks and citation omitted), *writ denied*, 2003-2781 (La. 12/19/03), 861 So. 2d 574). That means "Louisiana district courts do not have jurisdiction over employment[-]related disputes such as reinstatement, back pay, and merit increases asserted by classified civil service employees against the state." *Merida*, 2024 WL 4252748, at *7 (citing *Kling v. La. Dep't of Revenue*, 2018-1480, p. 14 (La. App. 1 Cir. 7/18/19); 281 So. 3d 696, 708, *writ denied*, 2019-01434 (La. 11/5/19); 281 So. 3d 671, and *writ denied*, 2019-01441 (La. 11/5/19); 281 So. 3d 671). "The thrust of the grant of exclusive jurisdiction over employment-related disputes between employers and employees in civil service is to preclude the district court from having concurrent jurisdiction with the Civil Service Commission over such disputes." *Merida*, 2024 WL 4252748, at *7 (citing *Kling*, 281 So. 3d at 709; *Johnson v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.*, 45,105, p. 6 (La. App. 2 Cir. 3/3/10); 32 So. 3d 1041, 1046).

But the Commission's exclusive jurisdiction is limited. For example, the Commission "has no subject matter jurisdiction over tort cases and cannot award general monetary damages." *Merida*, 2024 WL 4252748, at *7 (citing *Kling*, 281 So. 3d at 709; *Johnson*, 32 So. 3d at 1046). So, Louisiana courts have concluded that Article X does not preclude a plaintiff from bringing a claim for "damages beyond the scope . . . of the Commission's jurisdiction." *Merida*, 2024 WL 4252748, at *7

(citing *Barringer v. Robertson*, 2015-0698, p. 3 (La. App. 1 Cir. 12/2/15); 216 So. 3d 919, 922 n.3, *writ denied*, 2016-0010 (La. 2/26/16); 187 So. 3d 1004; *cf. Huval v. State ex rel. Dep't of Pub. Safety & Corrs.*, 2016-1857, p. 10–11 (La. 5/3/17); 222 So. 3d 665, 671–72 (reasoning that Article X did not preclude wrongful-termination plaintiffs from bringing tort claims in a Louisiana district court because the relevant state agency was "powerless to award ... the type of tort damages sought by plaintiffs")) (footnote omitted).

Federal courts have similarly held that claims for "general tort damages" that the Commission cannot award are not subject to the Commission's exclusive jurisdiction and can be brought in court. *See, e.g.*, *Pike v. Off. of Alcohol & Tobacco Control of the La. Dep't of Revenue*, 157 F. Supp. 3d 523, 541 (M.D. La. 2015); *Jones v. Gee*, No. 18-CV-5977, 2020 WL 564956, at *6 (E.D. La. Feb. 5, 2020); *Edmonds v. New Orleans City*, No. 16-CV-298, 2017 WL 2671690, at *4 (E.D. La. June 20, 2017).

Here, among other claims, Plaintiff asserts claims arising out of her reassignment and termination. (Doc. 1 ¶ 45). Plaintiff seeks back pay, front pay, and reinstatement. (*Id.*). In *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 557 (M.D. La. 2008), *aff'd*, 324 F. App'x 422 (5th Cir. 2009), this Court held:

> Because Article X, § 12(a) grants the Civil Service Commission the exclusive power and authority to hear and decide all removal and disciplinary cases, Louisiana district courts do not have jurisdiction over such employment related disputes as reinstatement, back pay and merit increases asserted by classified civil service employees against the state. See e.g., *Goldsby v. State, Dept. of Corrections,* 861 So.2d 236, 238 (La.App. 1 Cir.2003); see also, *Barenis v. Gerace,* 357 So.2d 892 (La.App. 1 Cir.1978) (holding that the Civil Service Commission has exclusive jurisdiction over the issue of whether a state employee was entitled to a promotion).

> The Civil Service Commission however has no authority to provide general tort damages. (*Simon v. Board of Commissioners of Port of New Orleans,* 875 So.2d 102, 106 (La.App. 4 Cir.2004). *Greenleaf v. DHH, Metropolitan Developmental Center,* 594 So.2d 418 (La.App. 1 Cir.1991) *writ denied,* 596 So.2d 102 (La.App. 4 Cir.1992)). Plaintiff in the present case claims damages for humiliation, embarrassment, loss of reputation, opportunity for advancement/promotion, lost wages and benefits, mental anguish and emotional distress. Therefore, the [state court] had subject matter jurisdiction over the general tort claims at the time of removal. As a consequence, jurisdiction is present in this court over the general tort claims[.]

*Id.* (footnote omitted).

In *Pike v. Off. of Alcohol & Tobacco Control of the La. Dep't of Revenue*, 157 F. Supp. 3d 523, 541 (M.D. La. 2015), the Court similarly held that "the [Commission] has exclusive jurisdiction over termination claims, including termination claims based on disability discrimination." *Id.* (deGravelles, J.); *see also Jones*, 2020 WL 564956, at *6 (dismissing plaintiff's claims stemming from her wrongful termination as within the [Commission's] exclusive jurisdiction). The Court found, however, that it had jurisdiction over Plaintiff's claims for loss of enjoyment, loss of reputation, lost wages and benefits, mental anguish, and emotional distress because the Commission has no authority to provide for general tort damages. *Pike*, 157 F. Supp. 3d at 541 (citing *Stevenson,* 547 F. Supp. 2d at 557).

The same result must issue here. Under *Stevenson* and *Pike*, the Court does not have jurisdiction over Plaintiff's claims arising out of her alleged reassignment and termination, nor does the Court have jurisdiction over her requests for back pay, front pay, and reinstatement. The Court does, however, have jurisdiction to adjudicate Plaintiff's remaining claims. (Doc. 1 ¶ 45).

The Court's conclusion is consistent with the relief Defendant requests. Defendant argues: "While this Court does not have jurisdiction over the alleged disciplinary actions (the reassignment and discharge, along with the claim for lost wages, back pay or front pay), this Court does have subject matter jurisdiction over Plaintiff's discrimination and retaliation claims which are unrelated to the disciplinary actions." (Doc. 21-1 at 9 (citing *Simien v. Freeman*, No. 04-701, 2005 WL 8155616, at *4 (M.D. La. July 19, 2005) ("[W]hether the plaintiff's claims fall within the exclusive jurisdiction of the Commission depends upon the nature of the claims. If the plaintiff's claims are rooted in disciplinary action, then they fall within the purview of the Commission. . . . If, instead, they are based on discrimination, then the district court has jurisdiction."))).

Accordingly, Defendant's Motion to Dismiss (Doc. 21) is **GRANTED** in this respect. Plaintiff's claims stemming from her reassignment and termination, and her requests for back pay, front pay, and reinstatement are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**B. Whether Emotional Distress Damages are Permitted Under the RA.**

Second, Defendant moves to dismiss Plaintiff's request for emotional distress damages as precluded by the U.S. Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022). (Doc. 21 at 2). In response, Plaintiff withdraws her request for emotional distress damages. (Doc. 25 at 7).

Accordingly, Defendant's Motion to Dismiss (Doc. 21) is **GRANTED** in this respect. Plaintiff's request for emotional distress damages is **DISMISSED WITH PREJUDICE.**

**C. Whether Plaintiff's Claims are Time-Barred.**

Third, Defendant argues that the majority of Plaintiff's claims are time-barred under Louisiana's: (1) one-year prescriptive period for any action occurring before July 1, 2024; and (2) two-year prescriptive period for any action occurring on or after July 1, 2024.[1] (Doc. 21 at 1; Doc. 21-1 at 11).

Plaintiff does not dispute the applicable prescriptive periods, but argues that she has plausibly alleged a hostile work environment, made up of a series of separate

---

[1] The Rehabilitation Act does not provide a statute of limitations. The Court has previously emphasized:

> When Congress does not establish a limitations period for a federal cause of action, the court is to borrow the most analogous period from state law. Generally, claims under the []RA are subject to the relevant state's limitations period for personal injury actions. Under Louisiana law, the applicable prescriptive period for personal injury actions is one year. Therefore, Plaintiff's claim pursuant to the []RA in this matter would be subject to a one-year statute of limitations.

*Fletcher v. Louisiana Dep't of Transp. & Dev.*, No. 18-CV-00860, 2019 WL 3240056, at *3 (M.D. La. July 18, 2019), *aff'd*, 848 F. App'x 163 (5th Cir. 2021).

Currently, however, Louisiana's prescriptive period applicable to personal injury claims is two years. La. Civ. Code art. 3493.1. Article 3493.1 has "prospective application only," and its two-year prescriptive period "shall apply to delictual actions arising after the [July 1, 2024] effective date of [Act 423]." TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Accordingly, to the extent the alleged facts underlying Plaintiff's claims occurred before July 1, 2024, the former Article 3492 and its one-year prescriptive period apply. *See Allied World Nat'l Assurance Co. v. Nisus Corp.*, 134 F.4th 821, 826 n.3 (5th Cir. 2025) (applying the former Article 3492's one-year prescriptive period to tort claim arising from facts occurring before July 1, 2024). To the extent the alleged facts underlying Plaintiff's claims occurred after July 1, 2024, the two-year prescriptive period applies. Neither party disputes the applicable prescriptive periods.

acts that collectively constitute one unlawful employment practice. (Doc. 25 at 9). Plaintiff urges that a hostile work environment claim is timely so long as any act contributing to the hostile work environment occurred within the prescriptive period, which begins to accrue upon the ceasing of the hostile work environment. (*Id.*). Plaintiff contends that the United States Court of Appeals for the Fifth Circuit has held that acts, which may otherwise be time-barred if viewed independently, may be considered under the totality of the circumstances as part of a hostile work environment claim. (*Id.* (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Defendant responds that Plaintiff's retaliation and failure to accommodate claims stem from discrete acts that trigger the running of the statute of limitations on the date in which the discrete act occurred, such that these claims cannot be saved by the continuing violations doctrine. (Doc. 27 at 7–10).

Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts. *See Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (citing *Huckabay v. Moore,* 142 F.3d 233, 238–39 (5th Cir. 1998)). Discrete actions, however, are not entitled to the shelter of the continuing violation doctrine. *Id.*

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and each of these discriminatory or retaliatory incidents is "a separate actionable 'unlawful employment practice.'" *Santos v.*

*Baton Rouge Water Works Co.*, No. CV 18-1098-JWD-RLB, 2021 WL 1227875, at *12 (M.D. La. Mar. 31, 2021) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). "A discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s].'" *Santos*, 2021 WL 1227875, at *12 (citing *Morgan*, 536 U.S. at 110). "[T]he limitations period begins on the date of the alleged unlawful employment action." *Santos*, 2021 WL 1227875, at *12 (citing *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011)).

The "continuing violation theory—which allows courts to consider otherwise time-barred acts of discrimination—is applicable only to hostile work environment claims, not discrimination or retaliation claims." *Pollard v. Dejoy*, No. CV 24-224, 2024 WL 3617534, at *7 (E.D. La. Aug. 1, 2024) (internal quotation marks omitted) (citing *Bashiri v. Alamo Cmty. Coll. Dist.*, No. SA-07-CV-1028, 2009 WL 2998228, at *2 (W.D. Tex. Sept. 16, 2009); *Morgan*, 536 U.S. at 110–11).[2]

Likewise, failure to accommodate claims arise from discrete acts. *Hernandez v. Verastique*, No. 4:25-CV-01395-O-BP, 2026 WL 2130902, at *3–4 (N.D. Tex. June 30, 2026), *report and recommendation adopted*, No. 4:25-CV-01395-O-BP, 2026 WL 2129952 (N.D. Tex. July 22, 2026) (citing

[2] *See also Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006) (Retaliation "is, by definition, a discrete act, not a pattern of behavior. . . [So] a plaintiff can only recover for retaliation to the extent that it occurred within the limitations period."); *Doe #1 v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. CV 21-564-SDD-SDJ, 2022 WL 16701930, at *18 (M.D. La. Nov. 3, 2022) ("The unique characteristic of a claim of retaliation as a discrete, 'easy to identify' act that 'occurs on the day that it happens' renders the continuing violation doctrine inapplicable."); *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017) (noting the difference between "discrete acts that form the basis of traditional discrimination claims from continuing conduct that forms the basis of hostile work environment claims").

*Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 674 (N.D. Tex. 2023); *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005)).

Accordingly, Plaintiff's retaliation claims based on the following instances of alleged retaliation are prescribed and will be **DISMISSED WITH PREJUDICE:** (1) retaliatory animus shown during July 18, 2023 meeting; (2) unjustifiably low performance review in August 2023; (3) false allegations of unprofessional behavior during hiring interviews in October 2023; (4) issuance of a baseless "Letter of Improvement" in October 2023; and (5) workload adjustments, intensified monitoring, and reassignment in January 2024.[3] (Doc. 1 ¶¶ 20, 21, 26).

Similarly, Plaintiff's failure to accommodate claims based on LDH's alleged failure to accommodate her on the following dates are prescribed and will also be **DISMISSED WITH PREJUDICE:** September 18, 2023, May 22, 2024, June 4, 2024, June 12, 2024, June 18, 2024, and June 20, 2024. (Doc. 1 ¶ 11–12, 14–16, 18). Plaintiff's failure to accommodate claims based on LDH's alleged failure to accommodate her on July 10, 2024, and August 9, 2024, are subject to Louisiana's two-year prescriptive period, and are thus timely, as Plaintiff filed suit on October 15, 2025. (*Id.* ¶ 11, 17, 22–23).

This leaves Plaintiff's hostile work environment claim. Although Defendant urges that Plaintiff does not assert a formal "hostile work environment" claim, courts have held that a plaintiff can adequately allege such a claim even without using the

[3] Each of these acts occurred before the change in Louisiana law on July 1, 2024, and therefore, the one-year prescriptive period applies. *See supra*, note 1. Because Plaintiff filed suit on October 15, 2025, these claims are untimely. (Doc. 1).

term "hostile work environment" where they allege "harassment" or facts that give the defendant "fair notice" of a hostile work environment claim. *See Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 308 (5th Cir. 2020) ("[Plaintiff] sufficiently alleged a hostile work environment claim; failure to use the 'magic words' is not dispositive."). Here, Plaintiff has done so.[4]

In *Pollard v. Dejoy*, the United States District Court for the Eastern District of Louisiana emphasized:

> The continuing violation doctrine "provides that when a plaintiff alleges a hostile work environment claim, 'as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability.'" *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 736 (5th Cir. 2017) (quoting *National R.R. Passenger Corps. V. Morgan*, 536 U.S. 101, 117 (2002)). The theory behind the continuing violation doctrine is that, in hostile work environment claims, acts within a more subtle pattern of discriminatory might not be sufficiently egregious or discrete to put the Plaintiff on notice that they have an actionable claim. *See Morgan*, 536 U.S. at 115-17.

*Pollard*, 2024 WL 3617534, at *5. Because some of the alleged actions at issue occurred within the relevant prescriptive periods, the Court will allow Plaintiff's hostile work environment claim to proceed. The Court also follows the *Pollard* court's conclusion that "detailed analysis and determination of which acts of discrimination

[4] The Parties have not briefed, and the Court will not address, the sufficiency of Plaintiff's hostile work environment claim on the merits at this time. The Court notes, however, that the Fifth Circuit has "read the Rehabilitation Act together with the ADA in allowing a harassment claim under the Rehabilitation Act," *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 180 (5th Cir. 2011), though the Circuit has also suggested that the elements for a harassment claim under the Rehabilitation Act are more stringent than an analogous claim brought under the ADA. *Julian v. DeJoy*, No. 23-11101, 2024 WL 4433076, at *7 (5th Cir. Oct. 7, 2024).

are sufficiently 'related' to form part of the hostile work environment would be premature on a motion to dismiss." *Pollard*, 2024 WL 3617534, at *7. Accordingly, Plaintiff's hostile work environment claim may proceed.

**D. Whether Plaintiff Alleged Actionable, "Materially Adverse" Employment Actions.**

Finally, Defendant urges that Plaintiff failed to allege actionable, "materially adverse" employment actions sufficient to state a retaliation claim under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). Because the Court has already dismissed Plaintiff's retaliation claims, the Court need not address this argument.

**E. Whether Plaintiff Should be Granted Leave to Amend.**

In the alternative, Plaintiff requests leave to amend the Complaint. (Doc. 25 at 12). Although leave to amend should be freely given, the Court need not grant leave to amend if an amendment would be futile. *Matter of: Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 236 (5th Cir. 2020) ("[W]here amendment would be futile, the court need not grant the plaintiff leave to amend.").

Here, the law is clear that the Court does not have jurisdiction over certain claims, and that other claims are time-barred, as described in detail above. No amendment would not change this reality, and thus, an amendment would be futile. Accordingly, the Court **DENIES** Plaintiff leave to amend with respect to these claims. The Court will, however, provide Plaintiff an opportunity to amend her Complaint to more fully plead her hostile work environment claim.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Louisiana Department of Health's ("LDH") **Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 21)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's claims stemming from her reassignment and termination, and her requests for back pay, front pay, and reinstatement are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff's request for emotional distress damages is **DISMISSED WITH PREJUDICE** based on Plaintiff's withdrawal of this request.

**IT IS FURTHER ORDERED** that Plaintiff's failure to accommodate claims based on LDH's alleged failure to accommodate her on September 18, 2023, May 22, 2024, June 4, 2024, June 12, 2024, June 18, 2024, and June 20, 2024, are **DISMISSED WITH PREJUDICE** as prescribed.

**IT IS FURTHER ORDERED** that Plaintiff's retaliation claims based on the following instances of alleged retaliation are **DISMISSED WITH PREJUDICE** as prescribed: (1) retaliatory animus shown during July 18, 2023 meeting; (2) unjustifiably low performance review in August 2023; (3) false allegations of unprofessional behavior during hiring interviews in October 2023; (4) issuance of a baseless "Letter of Improvement" in October 2023; and (5) workload adjustments,

intensified monitoring, and reassignment in January 2024.

**IT IS FURTHER ORDERED** that the following claims remain:

(1) Plaintiff's failure to accommodate claims based on LDH's alleged failure to accommodate her on July 10, 2024, and August 9, 2024; and

(2) Plaintiff's hostile work environment claim.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend her Complaint within 21 days of the issuance of this Ruling and Order, as described herein.

Baton Rouge, Louisiana, this 25th day of September, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**